IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

HASHMEL C. TURNER, JR.,

                Plaintiff,

v.                              Civil Action Number 3:06CV23

CITY COUNCIL OF THE CITY OF
FREDERICKSBURG, et al.,

                Defendants.

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendants, the City Council of the City of Fredericksburg, Virginia ("City Council") and Dr. Thomas J. Tomzak's ("the Mayor") Motion for Summary Judgment and Plaintiff, Hashmel C. Turner, Jr.'s ("Councilor Turner") Motion for Summary Judgment. For the reasons to follow, Defendants' Motion for Summary Judgment is granted. Plaintiff's Motion for Summary Judgment is denied.

### I.

The City Council consists of seven elected members, including Councilor Turner. It holds public meetings every two weeks to conduct business. The Mayor presides over City Council meetings and recognizes individuals to speak at the meetings.

At each City Council meeting, there is one opening prayer, which has been the City Council's custom and practice since the 1950s. The City Council uses a prayer rotation whereby City Council members place their names in the prayer rotation to deliver their prayer. The Mayor recognizes a

council member to deliver the City Council's opening prayer. Members of the public are asked to stand for the prayer, and many of them close their eyes and bow their heads during prayer. The opening prayer is listed on the agenda after the "Call to Order" and before the "Pledge of Allegiance."

Councilor Turner assumed a seat on the City Council in July 2002. Turner chooses to invoke the name of Jesus Christ in his prayers. On June 10, 2003, he closed the opening prayer with the words, "in Jesus' name, my Savior, I pray. Amen." On July 23, 2003, Councilor Turner closed the prayer with the words, "in the name of Jesus Christ, we thank you for what you're going to do. Amen."

No other City Council member has mentioned the name of Jesus Christ in his/her prayer since 2002. Other Council members from 2002 to the present have used various names to invoke a deity, including, "Almighty God," "Father," or "Heavenly Father."

In July 2003, the American Civil Liberties Union (ACLU) of Virginia contacted the City Council and asked that Councilor Turner refrain from using the official prayer to deliver explicitly Christian prayers. In response, Councilor Turner removed his name from the prayer rotation. In October 2003, Councilor Turner placed his name back on the prayer rotation and began to deliver prayers invoking the name of Jesus Christ. On July 26, 2004, the ACLU of Virginia sent a second letter to the City Council, threatening to seek judicial relief if Councilor Turner continued to invoke the name of Jesus Christ in his opening Council prayers.

On November 8, 2005, the Council voted 5-1 with Councilor Turner abstaining, to adopt a policy offering only "non-denominational" prayers. The prayer policy was a recommendation of the City Attorney, which states that the City Council could "continue its current practice of offering the

official prayer to a non-denominational 'God,' without invoking the name of a specifically Christian (or other denominational) deity." Alternatively, the City Attorney recommended that Council members could participate in private sectarian prayer in the City Council's chambers before the Council meetings were called to order. The private prayer "could be offered by a member of Council or a member of the clergy" and "could be offered in an expressly denominational (Christian) tradition."

Councilor Turner was scheduled to give the opening prayer on November 22, 2005. The Mayor asked Councilor Turner whether he would continue to invoke the name of Jesus Christ in his prayers. Councilor Turner said he would, and as a result, the Mayor did not recognize Councilor Turner to give the opening prayer.

On January 10, 2006, Councilor Turner filed a Complaint against the Mayor and the City alleging violations of his First Amendment rights of Free Speech, Free Exercise of Religion, and non-Establishment of religion and equal protection under the law. On May 30, 2006, Defendants moved for Summary Judgment. On June 23, 2006, Councilor Turner filed a cross motion for Summary Judgment.

## II.

A motion for summary judgment may be granted "only if the pleadings, depositions, interrogatory answers, admissions, and affidavits show 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Magill v. Gulf & W. Indus., Inc., 736 F.2d 976, 979 (4th Cir. 1984) (quoting Fed. R. Civ. P. 56(c)); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); E.E.O.C. v. Clay Printing Co., 955 F.2d 936, 940 (4th Cir. 1992). "Where . . . the record taken as a whole could not lead a rational trier of fact to find for

the non-moving party, disposition by summary judgment is appropriate." United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

After the movant has met its burden of showing that no genuine issue of material fact exists, the non-moving party may not rest on its pleadings, but must come forward with specific facts showing that evidence exists to support its claims and that there is a genuine issue for trial. Celotex, 477 U.S. at 324. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Id. A mere scintilla of evidence in support of the plaintiff's claim is not sufficient. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). There must be enough facts to support a verdict for him. Id. at 252–54.

### III.

**A.     Councilor Turner's opening prayer is government speech.**

The parties dispute whether Councilor Turner's speech is "government speech" or private speech. Plaintiff contends the opening prayer is private speech, and the City Council's measure impermissibly censors his speech based on his religious viewpoint. Defendants argue Councilor Turner's sectarian prayer is government speech that endorses a specific religion and thus violates the Establishment Clause.

There is a "crucial difference between *government* speech endorsing religion, which the Establishment Clause forbids, and *private* speech endorsing religion which the Free Speech and Free Exercise Clause protect." Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290, 302 (2000) (quoting Bd. of Educ. v. Mergens, 496 U.S. 226, 250 (1990) (emphasis in original)). If the opening prayer is

"government speech," the First Amendment guarantees with respect to free expression and exercise of religion are not implicated. "No individual has a First Amendment right to offer an official prayer reflecting his personal beliefs." Hinrichs v. Bosma, 410 F. Supp. 2d 745, 750 (S.D. Ind. 2006).

Plaintiff contends that he offers his prayer in his individual capacity and not on behalf of the entire City Council. Plaintiff contends the central purpose of the City Council meeting it to serve both the Council members and the public. Plaintiff further asserts the Council members historically exercised full editorial control over the content of the prayers, and the City Council members are the literal speakers. Finally, Plaintiff states the City Council members bear the ultimate responsibility for their prayers. Therefore, Councilor Turner contends his prayers are private speech, or at a minimum hybrid speech.

In order to determine the character of Plaintiff's speech, this Court looks at the purpose and effect of the opening prayer. Plaintiff's characterization of his speech ignores the primary purpose of the prayer, and the effect it has on others. First, the central purpose of the program in which the speech occurs is to conduct City Council business. Second, the local government can (and must, to comply with the Establishment Clause) exercise editorial control over the speech's content. Third, the identity of the speaker, Councilor Turner is a government official, acting in his official capacity. Contrary to Councilor Turner's assertions, the ultimate responsibility for the content of the speech, rests upon the City Council on whose behalf the prayer is offered. Additionally, the Mayor presides over the City Council meetings in his official capacity, and recognizes individual Council members to deliver the City Council's opening prayer. The prayer may not be offered without the Mayor's permission. The prayer by the City Council member is an official agenda item, listed on the meeting agendas. In similar situations, other courts, including the Fourth Circuit have held that legislative

prayer such as Councilor Turner's, is government speech. See Simpson v. Chesterfield County Bd. of Supervisors, 404 F.3d 276, 288 (4th Cir. 2005) (holding the opening prayer of the county board was government speech, where it was not intended for public discourse). See also Hinrichs, 410 F. Supp. 2d at 750 (holding the opening prayer of the state legislature was government speech where the speaker of the house "control[led] access to this particular . . . forum for official prayer" and had "not attempted to create a public forum in which all [we]re welcome to express their faiths"). Considering both the purpose and effect of the opening prayer, Councilor Turner's opening prayer is government speech, and thus, the First Amendment guarantees are not implicated.

**B.     Since the opening prayer is government speech, it must abide by the mandates of the Establishment Clause.**

The First Amendment, made applicable to the states through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.. Because the City Council's opening prayer is government speech, it must make content-based decisions, subject only to the proscriptions of the Establishment Clause. See Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 820 (1995). The City Council can restrict what is said on its behalf during the opening prayer without infringing on the speaker's viewpoint. Id.

**1.     The Supreme Court and this circuit require that legislative prayer be nonsectarian.**

The Supreme Court has established in Marsh v. Chambers, that the Establishment Clause permits a legislative body to invoke divine guidance as the City Council has done before engaging

6

in its public business. 463 U.S. 783, 792 (1983) (defining a legislative prayer as an act to "invoke Divine guidance on a public body entrusted with making laws . . . ."). The Marsh Court emphasized, that although legislative prayers do not "establish" religion, legislative bodies must ensure that any opening prayers are "nonsectarian." Id. at 793. Notably, the Supreme Court has read Marsh as respecting the tradition of legislative prayer, while precluding sectarian prayer. In County of Allegheny v. ACLU, the Supreme Court held unconstitutional the display of a creche in a county courthouse. 492 U.S. 573 (1989). In Allegheny, the Court explained that Marsh "recognized that not even the 'unique history' of legislative prayer can justify contemporary legislative prayers that have the effect of affiliating the government with any one specific faith or belief." Id. at 603.

The Fourth Circuit has also confronted the question of sectarian legislative prayer directly. Relying on Marsh, in Wynne v. Town Council of Great Falls, the Fourth Circuit held that sectarian legislative prayers—which invoke the name of a certain deity, as Councilor Turner has done here—are unconstitutional. 376 F.3d 292, 294 (4th Cir. 2004). The court's decision in Wynne upholds only nonsectarian opening prayer. It stated:

> Public officials' brief invocations of the Almighty before engaging in public business have always, as the Marsh Court so carefully explained, been part of our Nation's history. The Town Council of Great Falls remains free to engage in such invocations prior to Council meetings. The opportunity to do so may provide a source of strength to believers, and a time of quiet reflection for all.

Id. at 302.

The court proceeded to strike down a town's practice of opening city council meetings with prayers that ended with supplications like, "in Christ's name we pray." Id. Councilor Turner narrowly interprets Wynne as barring only frequent references to Jesus Christ to the exclusion of all other deities. He urges this Court to sanction isolated references to Jesus Christ in accordance with

his narrow reading of Wynne. Councilor Turner's adaptation of Wynne, would render the Establishment Clause inapplicable as long as a legislative prayer did not exceed a certain unspecified number or percentage of prayers. Despite his suggestion, Wynne does not direct this Court to conduct a quantitative analysis of the number and percentage of references to a specific deity. The Wynne court concluded that the Christian prayers at issue violated the rule of Marsh and Allegheny, by "affiliating" the government with the Christian religion. Id. at 300. Wynne did not restrict the number of invocations, rather it "enjoin[ed] the Town Council from invoking the name of a specific deity associated with any one specific faith or belief in prayers given at Town Council Meetings." 376 F.3d at 302.

Wynne's holding, that the Establishment Clause prohibits sectarian legislative prayers, was reaffirmed by the Fourth Circuit in Simpson v. Chesterfield County Bd. of Supervisors, 404 F.3d 276 (4th Cir. 2005). In Simpson, the court held that a local school board's nonsectarian prayers were permissible under Marsh and Allegheny, because the board's policy of inviting local clergy did not proselytize or advance any one, or disparage any other, faith or belief.[1] Councilor Turner's invocations of the name of Jesus Christ, whether they are sporadic or frequent violates the prohibition against sectarian legislative prayer.

### 2. The City Council's policy does not violate the Establishment Clause.

Plaintiff claims that in adopting a nonsectarian prayer policy, the City Council violated the Establishment Clause by attempting to "prescribe or proscribe the content of official prayers."

---

[1] Plaintiff seeks to distinguish Simpson by stating the Plaintiff in Simpson, a Wiccan leader was outside of the protected class. However, in Simpson, all of the prayers at issue were given by religious leaders, as opposed to government officials at a local government meeting. Yet the Fourth Circuit still considered the speech government speech and subject to the restrictions of the Establishment Clause.

Plaintiff's theory that the City Council violated the Establishment Clause contradicts the Fourth Circuit in <u>Wynne</u>, which affirmed an order enjoining the town council's practice of invoking names associated with the Christian faith at council meetings. Under Plaintiff's theory, the Fourth Circuit itself violated the Establishment Clause—by allegedly prescribing the content of the prayers—rather than find the sectarian prayer in violation of the Establishment Clause. This is an impracticable and inaccurate result.

Plaintiff relies on the Supreme Court's holding in <u>Lee v. Weisman</u>, for the proposition that government officials may not prescribe or proscribe the content of official prayers, even when motivated by an effort to ensure that such prayers are nonsectarian. 505 U.S. 577 (1992). Plaintiff's reliance on <u>Lee</u> impermissibly broadens its scope. <u>Lee</u> involved government-sponsored prayer at a high school graduation. In <u>Lee</u>, a high school invited a rabbi to give a prayer, but advised him that his prayers should be nonsectarian. The Court held that such school sponsored prayers were impermissible, whether sectarian or nonsectarian. <u>Id.</u> at 588–90. The decision was restricted to the school prayer context, in which government sponsored prayers are not permitted. The <u>Lee</u> Court refused to apply the rule of <u>Marsh</u>, to school prayer because of "[i]nherent differences between the public school system and a session of a state legislature." <u>Id.</u> at 596. The City Council, unlike the public high school at issue in <u>Lee</u>, has both the right to offer opening prayers, and the obligation to ensure that the prayers are nonsectarian. See <u>Snyder v. Murray</u>, 159 F.3d 1227, 1234 (10th Cir. 1998) (stating a legislative body may reject an opening prayer that "falls outside the long-accepted genre of legislative prayer" as defined by <u>Marsh</u>); <u>N. Carolina Civil Liberties Union Legal Found. v. Constangy</u>, 947 F.2d 1145, 1149 (4th Cir. 1991) (holding for purposes of the Establishment

Clause, legislative prayer is to be distinguished from such other forms of prayer as court prayer and school prayer that may be per se unconstitutional).

Like Councilman Turner, the Plaintiff in Simpson v. Chesterfield County Bd. of Supervisors, alleged that by denying her request to deliver the opening prayer at a meeting of the Board of Supervisors, the County had violated the Establishment Clause, the Free Exercise and Free Speech Clauses of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. 404 F.3d 276, 287–88 (4th Cir. 2005). The court in Simpson determined that the County had not violated the Establishment Clause in excluding Plaintiff from its list of persons permitted to deliver prayers. Therefore, the court held the "standards for challenges to government speech . . . require that [plaintiff's] other claims must be rejected." Id. at 288. Similarly, since Councilor Turner's prayer is government speech, his First and Fourteenth Amendment claims are rejected.

## IV.

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment and dismisses Councilor Turner's Complaint. The Court hereby denies Plaintiff's Cross-Motion for Summary Judgment. An appropriate Order shall issue.

      /s/ James R. Spencer
    CHIEF UNITED STATES DISTRICT JUDGE

ENTERED this   14th   day of August 2006